### In re VUKELIC'S ESTATE.

(Surrogate's Court, Monroe County. December 5, 1912.)

EXECUTORS AND ADMINISTRATORS (§ 24*)—RIGHT TO APPOINTMENT OF ADMINISTRATOR.

The treaty between the United States and Austria-Hungary of June 26, 1871 (17 Stat. 831), by article 15 confers upon consular officers the same immunities and privileges granted to functionaries of the same class of the most favored nations. The treaty between United States and Sweden, proclaimed March 20, 1911 (37 Stat. 1487), by article 14 provides that, where a citizen of either country dies intestate in the other, the consular representatives of the nation to which deceased belongs shall, so far as the laws of either country will permit, have the right to be appointed administrator. *Held*, that the consular representative of the emperor of Austria is entitled to administer upon the estate of a subject of such emperor dying intestate in this county, leaving property therein to be administered.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–140; Dec. Dig. § 24.*]

Application for the removal of an administrator appointed for the estate of Mile Vukelic, deceased. Application granted.

John A. Millener, of Rochester, for administrator.

Geo. F. Slocum, of Rochester, for De Nyiri, Austrian Consular Agent.

BROWN, S. Application for the removal of the administrator heretofore appointed of the above-named estate and for the appointment of the consular agent of the Austria-Hungarian monarch for the Buffalo district, which district includes the county of Monroe.

It appears that Mile Vukelic, the decedent, died in the city of Rochester, Monroe county, N. Y., on or about the 8th day of August, 1912, at the age of 22 years; that at the time of his death he was a resident of the town of Gates in said county; that he left no will and died possessed of certain personal property within this state, the value of which, as stated in the petition, will not exceed the sum of $50; that the decedent left no real property, and that a cause of action exists in favor of the administrator of said decedent for the benefit of his next of kin by special provision of law; that the amount of damages

to be recovered are unknown, and that it is impracticable to give a bond sufficient to cover the probable amount to be recovered therein; that the decedent was at the time of his death a subject of his majesty the Emperor of Austria and Apostolic King of Hungary; that the decedent left him surviving no widow and no descendant and left surviving a father, Marke Vukelic, residing at Rogulje, Austria-Hungary, as his only next of kin; that the petitioner herein, John de Nyiri, of the city of Buffalo, N. Y., is the consular agent of his majesty the Emperor of Austria and Apostolic King of Hungary for the consular district of Buffalo, which district includes the county of Monroe; that heretofore, and on or about the 10th day of September, 1912, one Nicholas Vukelic, claiming to be a first cousin of said decedent, filed a petition in the Surrogate's Court of Monroe county asking that letters be issued to him, and thereupon, without notice to the petitioner herein, letters of administration were issued to the said Nicholas Vukelic on or about the 10th day of September, 1912. The motion before the court is to set aside said appointment and to appoint said consular agent administrator of the deceased.

The rule of this court requires that notice should have been given to the consular agent, or a waiver of such notice secured from him, by the administrator heretofore appointed upon his application for appointment, but we shall not decide this application simply because that rule was violated, but we will consider the merits of the application and determine the application in this instance on the merits alone.

In the treaty between the United States and Sweden (37 Stat. 1487), proclaimed at Washington March 20, 1911, the second paragraph of article 14 of the treaty reads as follows:

"In the event of any citizens of either of the two contracting parties dying without will or testament, in the territory of the other contracting party, the consul general, consul, vice consul general, or vice consul of the nation to which the deceased may belong, or in his absence, the representative of such consul general, consul, vice consul general, or vice consul, shall, so far as the laws of each country will permit and pending the appointment of an administrator and until letters of administration have been granted, take charge of the property left by the deceased for the benefit of his lawful heirs and creditors, and, moreover, have the right to be appointed as administrator of such estate."

The treaty with Austria-Hungary, art. 15 (17 Stat. 831), as well as the treaty with Italy, art. 17 (20 Stat. 732), confers upon consular officers the same liberties, prerogatives, immunities, and privileges granted to functionaries of the same class of the most favored nation. Under this clause, whatever rights and privileges are granted to the consular officers of the kingdom of Sweden are available to consular officers of the same grade representing the monarchy of Austria-Hungary and the kingdom of Italy.

Counsel for the first appointed administrator calls the court's attention to the decision of the United States Supreme Court in Rocca v. Thompson, 223 U. S. 317, 32 Sup. Ct. 207, 56 L. Ed. 453, as authority for the position originally taken by the counsel for such administrator. By careful consideration of that case, however, it will be seen that that decision turned upon the proper construction to be given to the

word "intervene" in that portion of the treaty of the United States with Argentina which secured to the consular officers therein specified "the right to intervene in the possession, administration, and judicial liquidation of the estate of the deceased." The United States Supreme Court held that the word "intervene" did not authorize or provide for the appointment of any of the consular officers mentioned in the article as administrators of the estate of any decedent referred to therein. Since that decision authority for the right of a consular officer of a foreign government to administration upon the estate of one of his majesty's subjects must be looked for elsewhere than in the treaty with Argentina, and that authority is unmistakably found in the treaty with Sweden, of which a portion material to this subject is above quoted.

In the discussion of the Rocca v. Thompson Case, Justice Day, in his opinion, in arriving at the conclusion that the words of the Argentina treaty were not sufficient to justify the appointment of the Italian consul or his representative, called attention to the fact that treaties are generally very carefully drawn, and that, if in that treaty those words were meant to include appointment of the consul or his representative, language would have been so used as to make it clear that that was the intention, and cites the treaty with Sweden as showing that in that case clearer and different language was used relative to such appointments. That treaty was not capable of application to the case before the United States Supreme Court, because the issues therein arose in 1908, before the adoption of the treaty with Sweden.

Two cases involving the application of this treaty have recently been decided by Surrogate Fowler of the county of New York. One decision is in the Estate of Vincenze Baglieri, Deceased, reported in 137 N. Y. Supp. 175, in which the learned surrogate holds that under the Swedish treaty and the treaty between the United States and Paraguay of 1859, and the application of the "most favored nation" clause in the treaty with Italy, so far as they relate to the powers and rights of consular officers with reference to the administration of the estates of citizens of their respective countries, were conferred on like representatives of the Italian government, and held that it was obvious that the consul general of Italy was entitled to letters of administration on the estate of the intestate, who was a citizen of Italy and died in this country, in preference to the petitioner, who was a brother of the intestate and one of his next of kin. Subsequently, in the estate of Rusena M. Szabo, Deceased, reported in 143 N. Y. Supp. 678, Surrogate Fowler also held that the vice consul of the Emperor of Austria-Hungary had a right to have letters testamentary issued to a person named as executor in the will of the deceased revoked, where the will effected no disposition of her property, by reason of the fact that the sole beneficiary designated therein predeceased her, her personal property, which were the assets of her estate, passing as in cases of intestacy, and her next of kin, entitled thereto, are subjects of Austria-Hungary. He holds that this right is conferred by article 8 of the treaty of June 26, 1871 (17 Stat. 825) between Austria-Hungary and the United States, and further assured by articles 21 and 27 of the Spanish treaty of 1902 (33 Stat. 2114, 2119).

I am of the opinion that, under the provisions of our treaty with Austria-Hungary and the provisions of the treaty with Sweden and Paraguay, the representative of the consul of the Emperor of Austria-Hungary is entitled to letters of administration upon the estate of a subject of the Emperor of Austria-Hungary dying intestate in this county, leaving property to be administered therein, and that as a matter of right the petitioner herein, as such consular agent of his majesty the Emperor of Austria and Apostolic King of Hungary, for the district of Buffalo, is entitled to letters of administration upon the estate of Mile Vukelic, the deceased, and that the letters heretofore issued to Nicholas Vukelic should be revoked, and thereupon letters issued to the said John de Nyiri as such consular agent, upon his filing his oath of office and a bond, in form and amount to be approved by this court. Let an order be entered accordingly, without costs to either party as against the other.